THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ADOLPH REICH, Appellant.

*Court of Appeals, October 2, 1888.*

1. *Criminal law.    Witness.*—A summary of facts stated and held by the court of appeals to be proper subjects of consideration by the jury, which may have led them to a very sensible distrust of the prisoner's testimony.
2. *Charge.    Credibility.*—It is not error for the court to charge that " if he lied to the officers, that must affect his credibility ; the extent to which it should affect it is for you to say," as it amounted only to saying that it was a material fact and bore upon the credibility of the witness.

Appeal from a judgment of the court of general sessions in and for the city and county of New York entered upon a verdict, convicting the defendant of the crime of murder.

*Wm. F. Howe*, for appellant.

*McKenzie Semple*, for respondent.

FINCH, J.—The prisoner cut his wife's throat.    That fact is not disputed, and it is an ugly one to explain.    The answer interposed is that the deed was done in self-defense, and it rests wholly upon the testimony of the accused.    The jury did not credit the explanation, but rejected it as false.

There was reason and justification for their conclusion in that respect.    The character of the wound was itself significant.    One who strikes when his life is in danger and peril of death imminent, strikes where he can ; with haste ; almost at random ; with little chance to choose the aim or direction of the blow.    But here the wound inflicted indicates a deliberate purpose to kill, and an intent to make sure of that result.    The knife went into the throat with a stab on one side of the median line, and then was drawn across for a distance of four inches, with a determined and effectual force, which severed the arteries, the muscles, the windpipe and aesophagus, and drained all the blood from the body.    There was not merely the sudden stab of anger or terror, but a cut as calculated and effective as that of a butcher upon the throat of an ox.    But beyond the character of the wound there is that in the statement of the prisoner which goes far to negative the theory of self-defense.

The story which he tells is in substance this : That he had quarreled with his wife on account of her unchastity, and she had threatened his life ; that on the night of the murder he found the door of her room locked, and knocked several times in vain for admittance ; that his wife opened it at last being herself clothed only with her undergarment ; that as she opened the door a man slipped out under her arms and disappeared ; that the accused, after upbraiding her for her wantonness, undressed and went to bed ; that he observed his wife approaching him with one hand concealed behind her which he suspected held a knife, and saying that she meant to kill him ; that he seized the knife and pulled it through her hand and tossed it away ; that she got it again, and approached him with another threat ; that he seized her by the arm and caught up another knife ; that a struggle ensued of a violent character, which ended in his forcing her down upon the bed, with her legs hanging over the side, and in this position he cut her throat.    Taking as true the entire account, the jury were quite justified in

thinking that the accused was in no imminent peril when he struck the mortal blow. He had gained the mastery; the woman, for the moment, was at his mercy ; he could have, if he had not already, disarmed her, or summoned assistance by a call if necessary. The slashed throat was rather the product of his hatred and rage than of his terror or danger.

But his version of the facts is not credible in view of the other evidence. The occupant of the adjoining rooms heard plainly the movement of the murdered woman as she staggered, with her throat cut, by the door, but no sound of a previous struggle or affray. Probably there was none. Such a tumult, made by the fighting which the prisoner describes, could scarcely have passed unheard by those in the adjoining room. The accused had threatened his wife's life. It is quite probable that she had given him occasion for hatred and ill-temper. To those who came upon the scene he denied his own agency, and sought to throw suspicion elsewhere. These facts were proper subjects of consideration by the jury, and may have led them to a very sensible distrust of the prisoner's statement of the facts.

Upon this branch of the case the charge of the court was criticised and is claimed to have been erroneous, and it is insisted that " the jury were, in effect, told that they must disregard the defendant's evidence merely because he denied to the police officers that he had committed the crime." That is a criticism which the language of the charge does not justify. The court said : " If he lied to the officers, that must *affect* his credibility ; the *extent* to which it should affect it is for you to say." No exception was taken to this charge, and for that reason, as matter of right, a new trial cannot be claimed. People v. Cignarale, 16 N. Y. State Rep. 155. But an exception, if taken, could not have been sustained. The charge amounted only to saying that the fact referred to was material, and bore upon the credibility of the witness. The jury were not told to disbelieve him or to reject his testimony, but were plainly left to judge of the truth of his

story and believe or disbelieve as their judgment dictated. The lie which he admits that he told was necessarily wilful and intentional, and his explanation of why he told it, and this statement that he meant " when he came before the judge " to tell the truth, were put before the jury. To say that the falsehood did not affect his credibility at all would be to say that the evidence was immaterial, at least upon that issue. The jury were fairly left to give the fact such weight, upon their belief or disbelief of the accused, as to them seemed proper. The " extent " to which the credibility of the witness should be affected by the conceded falsehood was left wholly to the jury. Whether it should at all destroy belief or produce unbelief was left entirely to their judgment.

There were other criticisms upon the charge, but these were again as to matters which evoked no attention at the trial and led to no exception. There is an alleged misstatement as to the date of the prisoner's threat to kill his wife. The trial was in June, 1887, and the witness twice gave the date as " five or six months ago," while also describing it as in October or November of 1885, which put it back one year earlier. If counsel desired any correction by the court the attention of the learned recorder should have been called to the alleged error. The further criticisms upon the charge have been examined, but seem to us without adequate foundation and scarcely to justify further discussion.

The same remark is applicable to the objections made to the admission or rejection of evidence. In one or two instances, the questions of the public prosecutor were somewhat leading in form, but their admission was not, under the circumstances, an abuse of discretion. In the only instance which seems of importance, the court interposed and refused to permit the objectionable question to be answered. The reputation of the deceased as to her virtue, or the reverse, was not in issue and was properly excluded. Other objections taken need not prolong the discussion.

We discover no error in the record, and a careful survey of the whole evidence leads us to the belief that no injustice has been done to the prisoner.

The judgment should be affirmed.

All concur.